STATE OF NORTH CAROLINA v. CHARLIE VANCE RAWLINSON

No. COA08-585

(Filed 4 August 2009)

## 1. Larceny— misdemeanor larceny—joinder—subject matter jurisdiction—motion to dismiss—sufficiency of evidence

The superior court did not lack jurisdiction to render judgment on the charge of misdemeanor larceny of a license plate, or in the alternative, by refusing to dismiss the larceny charge at the close. of the State's evidence, because: (1) under N.C.G.S. § 15A-926(a), the superior court may join a misdemeanor to another charge over which the superior court has jurisdiction if the charges are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan; (2) a joinder motion need not be written if made at a hearing, and, in the judge's discretion, the motion may be made orally even at the beginning of trial; (3) in the instant case, the State made an oral motion to join the misdemeanor larceny charge with the felony charges in proceedings held 2 October 2007; (4) the projected evidence presented by the State was sufficient to show defendant's acts in a video store and the taking of the license plate were based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan; and (5) the State presented sufficient evidence including evidence tend-

ing to show that a license plate was stolen from a vehicle on 5 February 2005, the same day the incidents occurred at the video store leading to defendant's other charges; the vehicle was parked next to the video store; and defendant was arrested the following day in possession of a different vehicle, but with the stolen license plate attached.

**2. Burglary and Unlawful Breaking or Entering— felonious breaking or entering—motion to dismiss—sufficiency of evidence—implied consent—video store office**

The trial court did not err by refusing to dismiss the charge of felonious breaking or entering because: (1) the office in a video store was not open to the public and defendant did not have implied consent to enter the office; and (2) even if defendant had implied consent to enter the office of the video store, defendant's act of stealing the cash and checks inside the deposit bag rendered that implied consent void *ab initio*.

**3. Appeal and Error— preservation of issues—failure to assign error**

Although defendant contends that the trial court's order was defective based on the trial court's failure to make specific findings of fact or conclusions of law, this argument is not properly before the Court of Appeals because failure to assign error to the findings of fact precludes appellate review. N.C. R. App. P. 10(c).

Appeal by Defendant from judgments entered 4 October 2007 by Judge Carl R. Fox in Superior Court, Iredell County. Heard in the Court of Appeals 10 December 2008. An opinion was filed in this matter on 19 May 2009 and withdrawn by this Court on 5 June 2009. This opinion supercedes and replaces in full the opinion filed by this Court on 19 May 2009.

*Attorney General Roy Cooper, by Special Counsel Jay J. Chaudhuri and Assistant Special Counsel Lindsey L. Deere, for the State.*

*Irving Joyner for Defendant.*

McGEE, Judge.

Charlie Vance Rawlinson (Defendant) was indicted by the grand jury in Iredell County on 22 January 2007 on the charges of felony larceny, attaining habitual felon status, larceny chose in action, felony

breaking or entering, preparation to commit burglary or other house-breakings, safecracking, and misdemeanor larceny. The record now shows that the trial court granted the State's motion for joinder pursuant to N.C. Gen. Stat. § 15A-926 (2008), on the grounds that the offenses were "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." Defendant agreed that the offenses were "all connected in time" and did not object to the joinder of the offenses. A jury found Defendant guilty of felony breaking or entering and misdemeanor larceny on 4 October 2007. Defendant admitted his status as an habitual felon. The trial court sentenced Defendant to a term of 80 months to 105 months in prison. The State's evidence at trial tended to show the following.

Cheryl White (White) was working as manager of Queen City Audio, Video and Appliance (the video store) in Mooresville, North Carolina, on 5 February 2005. The video store was located in a former drugstore building and was divided into two areas: the retail area and the manager's office (the office). The retail area was the largest area, and it was located on ground level. The office was located on the left side of the retail area, two or three steps above the retail area. The office had a two-way mirror across the exterior of the office that faced the retail area. The entire retail area could be seen from inside the office, but customers in the retail area could not see inside the office. The office was not open to the public and during normal business hours, the door to the office remained closed, but unlocked. White testified that the video store's safe was located in the office, and that there was a bank deposit bag containing cash and checks stored inside the safe.

White was assisting a customer when she noticed a man, later identified as Defendant, standing alone at the front of the video store. When White's customer decided to make a purchase, White escorted the customer up to the office to obtain rebate information related to the customer's purchase. As White and the customer approached the office, White saw the office door open. White saw Defendant inside the office, standing over White's desk and holding White's purse. White asked Defendant what he was doing in the office, and Defendant replied, "I'm looking for a bathroom." White told Defendant he would not find a bathroom in the office. White testified that she did not take her eyes off Defendant. She said that her close proximity to Defendant and the bright lighting in the video store gave her a good view of Defendant. Defendant then dropped White's purse, walked

out of the office, and left the video store. White locked the office and immediately followed Defendant. White and the customer ran out of the video store but were unable to see Defendant. They did see a black sports utility vehicle speeding out of the parking lot.

White returned to the office and discovered that the safe was pulled loose from the bolts in the desk, was moved forward, and its door was open. White testified the contents of the safe, which included the bank deposit bag and a one-hundred dollar bill, were missing. The bank deposit bag contained checks totaling $7,242.19. Police were called and responded within five minutes. Lieutenant John Brammer (Lt. Brammer) of the Mooresville Police Department investigated the incident.

Jennifer Ibinson (Ibinson) testified that she was an employee at the Cool Cuts Hair Salon, located in the same shopping center as the video store, and was within walking distance of the video store. Ibinson testified that her North Carolina license tag, PWE 4149, was attached to her vehicle on the morning of 5 February 2005. However, when she returned home from work that afternoon, Ibinson noticed her license plate was missing.

Gertrude Knox (Knox) testified that she was employed at the Dollar General store in Kings Mountain, North Carolina in February 2005. The Dollar General contained an office that was not open to the public and that was accessible only through a walkway through the stockroom. A safe containing money was located inside the office. The walls of the office did not reach the ceiling, which made it possible to gain entry by climbing up and over the office walls.

Knox testified that when she entered the Dollar General office on 6 February 2005, she was holding a one-hundred dollar bill, which she placed in her pocket. She used a key to enter the locked office and discovered Defendant standing in front of the safe. Defendant told Knox that he was "[l]ooking for the bathroom" and Knox responded to Defendant that "he wasn't supposed to be back there without permission." Defendant turned to leave the office, but he stopped and attempted to get the one-hundred dollar bill out of Knox's pocket. Defendant tore a piece of the one-hundred dollar bill that was in Knox's pocket. Knox then screamed for help.

Jennifer Tate (Tate), assistant manager at Dollar General, responded to Knox's cry for help. Tate recognized Defendant as a customer from earlier in the day. Tate called 911 and Defendant fled the Dollar General, driving away in a vehicle. The Dollar General was

well lit, and neither Knox nor Tate had any difficulty seeing Defendant while he was in the Dollar General.

Corporal Mark Butler (Cpl. Butler) of the Kings Mountain Police Department received Tate's 911 call and responded. Cpl. Butler had received a description of the suspect's vehicle through the 911 dispatch. The vehicle was described as a red Plymouth with North Carolina license tag PWE 4149. Cpl. Butler saw a vehicle matching the description and attempted to stop it. The vehicle initially stopped, but as Cpl. Butler started to exit his vehicle, the suspect drove away. Cpl. Butler continued pursuit in his vehicle until the suspect stopped, exited his vehicle, and ran away on foot. Cpl. Butler chased the suspect on foot, and apprehended him in the back of a Food Lion store. The suspect was later identified as Defendant.

Lt. Brammer learned on 11 February 2005 that the missing license plate stolen from Ibinson's vehicle on 5 February 2005 was recovered by Cpl. Butler as a result of the car chase from the Dollar General on 6 February 2005. Lt. Brammer returned to the video store approximately two weeks after the incident and asked White if she could identify the person who stole funds from the video store safe on 5 February 2005. Lt. Brammer presented White with a six-picture photographic line-up that included Defendant's photograph. When White was shown the photographic line-up, she immediately identified Defendant as the man she had seen in the office of the video store on 5 February 2005.

At the close of the State's evidence, Defendant moved to dismiss the larceny charge. Defendant's motion was denied. Defendant did not present any evidence at trial. A jury found Defendant guilty of felony breaking or entering and misdemeanor larceny. Defendant appeals.

I.

[1] In Defendant's first argument, he contends that the superior court lacked subject matter jurisdiction to render judgment on the charge of misdemeanor larceny, and, in the alternative, that the trial court erred in refusing to dismiss the larceny charge at the close of the State's evidence. We disagree.

Defendant argues that because the district court has "exclusive, original jurisdiction for the trial of criminal actions . . . below the grade of felony, and the same are hereby declared to be petty misde-

meanors[,]" N.C. Gen. Stat. § 7A-272 (2007), the superior court lacked subject matter jurisdiction over the misdemeanor charge because it was not first tried in district court. The superior court may obtain jurisdiction over a misdemeanor charge by direct appeal to the superior court from a conviction in district court. *State v. Martin*, 97 N.C. App. 19, 22-23, 387 S.E.2d 211, 213 (1990). Additionally: "The superior court has jurisdiction to try a misdemeanor charge: . . . (3) [w]hich may be properly consolidated for trial with a felony under G.S. 15A-926[.]" *State v. Petersilie*, 334 N.C. 169, 175, 432 S.E.2d 832, 835-36 (1993) (quoting N.C. Gen. Stat. § 7A-271(a)). Pursuant to N.C. Gen. Stat. § 15A-926(a), the superior court may join a misdemeanor to another charge over which the superior court has jurisdiction if the charges are "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a) (2007). "[A] joinder motion 'need not be *written* if made at a hearing, and, in the judge's discretion, the motion may be made orally even at the beginning of trial.' " *In re R.D.L.*, 191 N.C. App. 526, 534, 664 S.E.2d 71, 76 (2008) (citations omitted).

In the case before us, the State made an oral motion to join the misdemeanor larceny charge with the felony charges in proceedings held 2 October 2007. Defendant stated to the trial court that he had no objection to this joinder. The State then presented its theory of the case to the trial court, which included projected evidence that on 5 February 2005 Defendant entered the video store, pried open a safe, and then fled the store. On that same day, a license plate was stolen from a vehicle parked in a lot near the video store. The following day, Defendant was seen near a safe in a Dollar General store, and fled when confronted. He sprayed pepper spray into the face of an elderly lady who was following him and threw her to the ground. Other witnesses saw him run, get into a vehicle, and drive away. One witness memorized the license plate number on the vehicle, and police stopped the vehicle later that day, apprehending Defendant after a foot chase. The license plate recovered from the vehicle in which Defendant fled was the same as the one stolen from the parking lot outside the video store the day before. At the close of the hearing on the motion for joinder, the trial court again asked: "So these offenses are all joined without objection; is that correct?" Defendant responded: "Yes, sir."

We hold that the projected evidence presented by the State was sufficient to show Defendant's acts in the video store and the taking

of the license plate were "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a). The trial court did not abuse its discretion in allowing the State's oral motion for joinder.

Defendant next argues that the State's evidence in support of the larceny charge was insufficient to allow the issue to go to the jury. We first note that Defendant included no citation in his brief to any authority in support of this argument. This is in violation of Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, and subjects this argument to dismissal. N.C.R. App. P. 28(b)(6); *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008). Furthermore, we hold the State presented sufficient evidence to survive Defendant's motion to dismiss the larceny charge.

> "In considering a motion to dismiss, it is the duty of the court to ascertain whether there is substantial evidence of each essential element of the offense charged." "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In ruling on a defendant's motion to dismiss, the evidence is viewed in the light most favorable to the State and the State is allowed every reasonable inference.

*State v. Friend*, 164 N.C. App. 430, 438, 596 S.E.2d 275, 281 (2004) (internal citations omitted). "To convict a defendant of larceny, it must be shown that [the defendant] (1) took the property of another; (2) carried it away; (3) without the owner's consent, and (4) with the intent to deprive the owner of the property permanently." *State v. Reeves*, 62 N.C. App. 219, 223, 302 S.E.2d 658, 660 (1983) (citations omitted).

> The doctrine of recent possession " 'allows the jury to infer that the possessor of certain stolen property is guilty of larceny.' " This Court has also explained that under the doctrine of recent possession, the State must show three things: "(1) that the property was stolen; (2) that defendant had possession of this same property; and (3) that defendant had possession of this property so soon after it was stolen and under such circumstances as to make it unlikely that he obtained possession honestly."

*Friend*, 164 N.C. App. at 438-39, 596 S.E.2d at 282 (internal citations omitted).

The State's evidence tends to show that Ibinson's license plate was stolen from her vehicle on 5 February 2005, the same day the incidents occurred at the video store leading to Defendant's other charges. Ibinson's vehicle was parked next to the video store. Defendant was arrested the following day in possession of a vehicle, not Ibinson's, but with Ibinson's license plate attached. We hold this evidence, when viewed in the light most favorable to the State, was sufficient for the charge of larceny to go to the jury. This argument is without merit.

## II.

[2] In Defendant's second argument, he contends the trial court erred in refusing to dismiss the charge of felonious breaking or entering based on insufficiency of the evidence. We disagree.

"Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon." N.C. Gen. Stat. § 14-54(a) (2007). "Thus, '[t]he essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein.' " *State v. Brooks*, 178 N.C. App. 211, 214, 631 S.E.2d 54, 57 (2006) (quoting *State v. White*, 84 N.C. App. 299, 301, 352 S.E.2d 261, 262, *cert. denied*, 321 N.C. 123, 361 S.E.2d 603 (1987)). In order for an entry to be unlawful under N.C. Gen. Stat. § 14-54(a), the entry must be without the owner's consent. *See State v. Boone*, 297 N.C. 652, 655, 256 S.E.2d 683, 685 (1979). "[A]n entry with consent of the owner of a building, or anyone empowered to give effective consent to entry, cannot be the basis of a conviction for felonious entry under [N.C. Gen. Stat. §] 14-54(a)." *Id.* at 658, 256 S.E.2d at 687. "However, the subsequent conduct of the entrant may render the consent to enter void *ab initio*." *Brooks*, 178 N.C. App. at 214, 631 S.E.2d at 57; *see State v. Speller*, 44 N.C. App. 59, 60, 259 S.E.2d 784, 785 (1979) (holding that the defendant's actions where he went "into an area not open to the public and remain[ed] hidden there past closing hours made the entry through the front door open for business unlawful.").

Defendant cites *Boone, Brooks*, and *State v. Winston*, 45 N.C. App. 99, 262 S.E.2d 331 (1980) in support of his argument that he had implied consent to enter the video store. In *Boone*, the defendant entered a store that was open to the public during business hours. *Boone*, 297 N.C. at 653, 256 S.E.2d at 684. The defendant briefly left the store and then returned with three other people. *Id.* The defendant remained outside while the other three went inside for three to

five minutes, and then the defendant and the others left. *Id.* In *Boone,*
our Supreme Court held that because the defendant entered the store
at a time when it was open to the public, his entry was with the con-
sent of the owner and could not serve as the basis for a conviction for
felonious entry. *Id.* at 659, 256 S.E.2d at 687. In *Brooks,* the defendant
and a co-participant entered a law office, a business open to the pub-
lic, but went into an area of the law office they knew was not open to
the public after the co-participant had been told not to return to the
premises. *Brooks,* 178 N.C. App. at 212-13, 631 S.E.2d at 56. Our Court
held that

> [w]hen [the] defendant entered the reception area of the firm, he
> did so with implied consent from the firm. However, [the] defend-
> ant took action which rendered this consent void *ab initio* when
> he went into areas of the firm that were not open to the public so
> that he could commit a theft[.]

*Id.* at 215, 631 S.E.2d at 57. Unlike in *Brooks,* Defendant argues that
in the present case, the State failed to produce required evidence that
Defendant was aware of the limits of the implied consent or was
informed of an express withdrawal of consent to enter the video
store office.

In *Winston,* the defendant entered an office of the Clerk of
Superior Court of Cumberland County in the Cumberland County
Courthouse in Fayetteville, North Carolina during regular working
hours. *Winston,* 45 N.C. App. at 100, 262 S.E.2d at 332. The office was
connected by a corridor to a large hallway, and was located on the
first floor of the courthouse. *Id.* There were no signs indicating that
either the corridor or the office were private and not open to the pub-
lic, while other areas of the courthouse did have such signs informing
the public of the private nature of those areas. *Id.* The office was
used to handle adoptions, foreclosures, and other business of the
clerk of court which necessarily required the use of the office by
members of the general public. *Id.* at 101, 262 S.E.2d at 333. Our
Court held that because the office was open for business to the pub-
lic when the defendant entered, "[t]he general public, including the
defendant, had implied consent and invitation to enter the office at
that time." *Id.*

In the present case, as in *Boone,* the video store was open to the
public, and thus Defendant had implied consent to enter the video
store. *See Boone,* 297 N.C. 652, 256 S.E.2d 683. At issue, however, is
whether the video store's office, where the safe was located, was also

open to the public so as to extend that implied consent for entry to the office. Our Court considered this issue in its recent opinion *In re S.D.R.*, 191 N.C. App. 552, 664 S.E.2d 414 (2008).

In *In re S.D.R.*, the defendant was brought to the Anson Cooperative Extension Service (the Extension) in Wadesboro, North Carolina as part of a community service and restitution after-school program. *Id.* at 554, 664 S.E.2d at 417. The defendant was instructed to sit in the Extension's library, which was located directly across from the office of the Extension's director. *Id.* The director testified that she had seen the defendant sitting in the library, and that when she returned from a brief trip to the restroom, the defendant was standing in the doorway of her office. *Id.* The director later discovered that cash that had been in her purse was missing. *Id.*

On appeal, our Court distinguished *In re S.D.R.* from the facts in *Winston*. We held that the director's office in *In re S.D.R.* was not held out to the public in the same way that the clerk's office was in *Winston*. *Id.* at 557, 664 S.E.2d at 419.

> Although the Extension is a public building that houses a public agency, just as the Cumberland County Courthouse [in *State v. Winston*] is a public building that houses public agencies, the evidence does not show that [the director's] job functions necessarily require the general public to have access to [the director's] office or that members of the general public use [the director's] office.

*Id.* The director's office at the Extension was not open to regular foot traffic, and although members of the public occasionally did come into the office, they had to either have an appointment or be specifically invited to enter. *Id.* at 558, 664 S.E.2d at 419-20. Furthermore, we held that even if the defendant in *In re S.D.R.*, had implied consent to enter the director's office because it was necessary for the general public to have access to that office, the act of stealing cash from the director's purse was sufficient to render that implied consent void *ab initio* as contemplated by *Winston* and *Boone*. *Id.* at 557, 664 S.E.2d at 420.

In the case before us, we hold that the office in the video store was similar to the director's office in *In re S.D.R. See id.* In the present case, the office was attached to the retail area of the video store, which was open to the public during regular business hours, and when Defendant entered the video store. Also, members of the

general public did sometimes need to enter the office for business purposes. However, like the director's office in *In re S.D.R.*, members of the general public were only permitted entrance into the office when invited and accompanied by an employee of the video store. We hold that the office in the video store was not open to the public and that Defendant did not have implied consent to enter the office. Moreover, even if Defendant had implied consent to enter the office of the video store, Defendant's act of stealing the cash and checks inside the deposit bag rendered that implied consent void *ab initio*. *See id.* This argument is without merit.

### III.

**[3]** In Defendant's fourth assignment of error, he contends the trial court committed reversible error in preparing a defective order in denying Defendant's request to suppress the identification of Defendant by White. However, Defendant's argument on appeal is actually that the trial court's order was defective because the trial court failed to make specific findings of fact or conclusions of law pursuant to N.C. Gen. Stat. § 15A-977(f). As Defendant has not assigned error to the trial court's failure to make specific findings of fact and conclusions of law, Defendant's argument is not properly before our Court.

Although findings of fact may be challenged for the first time on appeal, their sufficiency must be properly raised for appellate review. N.C.R. App. P. 10. Failure to assign error to the findings of fact precludes appellate review. N.C.R. App. P. 10(c); *see State v. Tadeja*, 191 N.C. App. 439, 444, 664 S.E.2d 402, 407 (2008) (holding where "[the] defendant failed to assign error to any of the trial court's findings of fact or conclusions of law these contentions [were] not reviewable."). Defendant's third argument is dismissed.

Defendant's remaining assignment of error was not set out in Defendant's brief and is deemed abandoned. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. Rule 28(b)(6).

No error.

Judges BRYANT and GEER concur.