DAVIS, Judge.
 

 *761
 

 *916
 
 In this appeal, we consider whether a defendant can lawfully be convicted of the offenses of domestic criminal trespass and breaking or entering where he possessed the prior consent of the victim to enter some-but not all-of the premises at issue. David Allen Vetter ("Defendant") appeals from his convictions for domestic criminal trespass, misdemeanor breaking or entering, and injury to real property. Because we find that Defendant exceeded the scope of the permission that had been granted to him, we affirm his convictions.
 

 Factual and Procedural Background
 

 The State presented evidence at trial tending to establish the following facts: Defendant dated Brittany Poole for approximately two years and lived with Poole in her Lincolnton, North Carolina home from 2013 until April 2015. Despite the fact that Defendant never possessed a key
 
 *917
 
 to the house, Poole provided him with a garage door opener and generally left the door leading from the garage to the interior of the residence unlocked during the time period when Defendant was living with her. The home also had a security system that could be activated and deactivated by entering a code on a keypad. Defendant possessed the code to the security system while he lived at the residence.
 

 In April 2015, Poole ended the relationship and ordered Defendant to leave her home. Although he moved out of the residence, Defendant did not take all of his belongings with him. Poole placed the majority of Defendant's possessions in the garage. In addition, his boat remained in the driveway. On a number of occasions thereafter, she would "tell[ ] him to come get his things." Poole testified that although Defendant had permission to enter the garage to retrieve his belongings he was not permitted to go inside the interior of the home.
 

 On 11 June 2015, Defendant arrived unannounced at the residence. He spoke to Poole in the driveway as he was securing his boat to his truck. She asked if he was there to take his boat, and Defendant responded that he had also come "to get some other stuff." Following this interaction, Poole activated her home security system and left to visit a friend in the nearby town of Maiden. Using an application on her cell phone, she was able to observe Defendant's actions by watching a video stream from cameras that had been installed at her residence as part of her home security system. She stopped watching once Defendant drove away with the boat.
 

 Unbeknownst to Poole, shortly after leaving the residence Defendant returned to her home. Poole subsequently received a call from the security company informing her that her security alarm had been triggered. A company representative asked her if she wanted the police to be notified, and she responded in the affirmative. Poole returned to the residence and discovered that the door leading from the garage to the interior of the house was "completely kicked in," although nothing was missing.
 

 Shortly thereafter, Deputy William Payne of the Lincoln County Sheriff's Office arrived at the residence. Using her cell phone, Poole accessed a video recording from the security cameras and viewed the video with Deputy Payne. The video showed a person entering the home through the broken interior garage door and attempting to turn off the alarm system before leaving the residence. Poole identified Defendant as the person shown on the video.
 

 Defendant was indicted by a Lincoln County grand jury on 14 March 2016 for felony breaking or entering, domestic criminal trespass, and
 
 *918
 
 injury to real property. A jury trial was held beginning on 29 November 2016 before the Honorable Nathaniel J. Poovey in Lincoln County Superior Court.
 

 At trial, Poole testified on direct examination, in pertinent part, as follows:
 

 [PROSECUTOR]: Okay. Who made the decision for David Vetter to leave your home in April?
 

 [POOLE]: I mean, I told him to leave and he left, except his things were still at the home.
 

 *762
 
 ....
 

 [PROSECUTOR]: Okay. And as of June of 2015, what property, if any, did David Vetter still have at your home?
 

 [POOLE]: A lot of stuff. The garage was half filled with his stuff. There was stuff underneath my house and his daughter's bed suit was in the home.
 

 [PROSECUTOR]: Okay. And did he have permission to go in your garage to get any of that-
 

 [POOLE]: Yes.
 

 [PROSECUTOR]: -stuff? Did he have permission to go into your home-
 

 [POOLE]: No.
 

 [PROSECUTOR]: -inside your house to get any of that stuff-
 

 [POOLE]: No.
 

 ....
 

 [PROSECUTOR]: Okay. And did David Vetter have any-have permission to take any of your items from within your home?
 

 [POOLE]: No.
 

 [PROSECUTOR]: Okay. And just tell the jury, if you would, in a little more detail about what happened while David Vetter-while you were there at your home on June 11 and David Vetter was there.
 

 *919
 
 [POOLE]: I walked out to get into my vehicle. I noticed he was there hooking his boat up. I walked back inside, locked my door, set the alarm, and left.
 

 [PROSECUTOR]: And when you say "lock your door," which door?
 

 [POOLE]: The garage door which I normally leave unlocked, I locked it.
 

 [PROSECUTOR]: Why did you do that that day?
 

 [POOLE]: Because I knew he was there and he had no reason to be inside the house.
 

 ....
 

 [PROSECUTOR]: ... Was there any conversation about him going in the house?
 

 [POOLE]: No.
 

 [PROSECUTOR]: Okay. And again, did he have permission to go into your house?
 

 [POOLE]: No.
 

 ....
 

 [PROSECUTOR]: Okay. Now, you said, I believe, that you set your alarm with an app on your phone.
 

 [POOLE]: Uh-huh.
 

 [PROSECUTOR]: Did you have an occasion while you were there to do anything else in regard to your alarm?
 

 [POOLE]: I watched him. I watched him on the outside cameras get the boat and leave, but I pretty much quit watching after that. And it was probably not even 20 minutes later that the alarm company called me to say, "Your alarm is going off. Do you want us to send the police?" And I said, "Yes. My ex-boyfriend has been there."
 

 [PROSECUTOR]: Okay. And if you would, describe for the jury your alarm system, where you got it and how it was set up.
 

 [POOLE]: It's CPI. They came in and set it all up.
 

 *920
 
 [PROSECUTOR]: And do you know how to work that alarm system?
 

 [POOLE]: Uh-huh.
 

 [PROSECUTOR]: And how do you work that alarm system?
 

 [POOLE]: Well, there's a keypad at the garage door that you can set it with, or I generally use the app. It's the easiest thing. I can watch the cameras from the app. I can set it. I can turn it on, off, delay it, whatever.
 

 ....
 

 [PROSECUTOR]: Okay. And did you-while you were at the other address in Maiden, again, tell the jury what use, if any, you made of that app and how you did that.
 

 [POOLE]: All I did was set the alarm and I left. And I watched the outside cameras to see that the boat and the truck left. But pretty much after that I quit watching it. I assumed he got the boat and he was not coming back.
 

 [PROSECUTOR]: Okay. So did you actually see [him] leave on the app?
 

 [POOLE]: Uh-huh.
 

 ....
 

 *763
 
 [PROSECUTOR]: Now let me be clear: So there were items in the garage that he could get?
 

 [POOLE]: Uh-huh.
 

 [PROSECUTOR]: But did he have permission to come into your house to get any items?
 

 [POOLE]: He didn't need to be in the home. He didn't live there. He had plenty of stuff to get outside in my garage and underneath my home that were his that he could have taken.
 

 ....
 

 [PROSECUTOR]: But were those things limited-Were you fine with him getting anything other than the things that he was getting out of the garage?
 

 *921
 
 [POOLE]: No.
 

 ....
 

 [PROSECUTOR]: And did you ever on June 11 of 2015 give David Vetter permission to come within the main part of your home past the garage?
 

 [POOLE]: He was allowed to get his belongings from the garage.
 

 [PROSECUTOR]: Okay. But to come-to come into-
 

 [POOLE]: To come in the house?
 

 [PROSECUTOR]: -past the garage?
 

 [POOLE]: No. No.
 

 [PROSECUTOR]: And was he given permission without your presence to take any items at all from your house?
 

 [POOLE]: Not from in the home.
 

 On cross-examination, the following exchange occurred between Poole and Defendant's counsel:
 

 [DEFENDANT'S COUNSEL]: Okay. You said this morning I think that at some point you gave Mr. Vetter notice to leave.
 

 [POOLE]: Uh-huh.
 

 [DEFENDANT'S COUNSEL]: Am I remembering that right?
 

 [POOLE]: Uh-huh.
 

 ....
 

 [DEFENDANT'S COUNSEL]: Okay. When did you give him that notice to leave?
 

 [POOLE]: April, May, something like that. End of April, beginning of May.
 

 At the close of the State's evidence, Defendant moved to dismiss all three charges based on insufficiency of the evidence. The trial court denied Defendant's motion except as to the felonious breaking or entering charge and instead submitted the lesser included offense
 
 *922
 
 of misdemeanor breaking or entering-along with the remaining two charges-to the jury.
 

 On 30 November 2016, the jury convicted Defendant of misdemeanor breaking or entering, domestic criminal trespass, and injury to real property. The trial court consolidated the breaking or entering and domestic criminal trespass convictions and sentenced Defendant to 45 days imprisonment, suspended the sentence, and placed him on supervised probation for 24 months. The court also sentenced Defendant to 45 days imprisonment for the injury to real property conviction, suspended the sentence, and placed him on supervised probation for 24 months. Defendant filed a timely notice of appeal.
 

 Analysis
 

 Defendant argues that the trial court erred in denying his motion to dismiss the misdemeanor breaking or entering and domestic criminal trespass charges based on insufficiency of the evidence. "A trial courts denial of a defendant's motion to dismiss is reviewed
 
 de novo
 
 ."
 
 State v. Watkins
 
 , --- N.C. App. ----, ----,
 
 785 S.E.2d 175
 
 , 177 (citation omitted),
 
 disc. review denied
 
 ,
 
 369 N.C. 40
 
 ,
 
 792 S.E.2d 508
 
 (2016). On appeal, this Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator[.]"
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (citation omitted),
 
 cert. denied
 
 ,
 
 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed. 2d 150
 
 (2000).
 

 Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). Evidence must be viewed in the light most favorable to the State with every reasonable inference drawn in the
 
 *764
 
 State's favor.
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed. 2d 818
 
 (1995). "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal."
 
 Smith
 
 ,
 
 300 N.C. at 78
 
 ,
 
 265 S.E.2d at 169
 
 .
 

 I. Breaking or Entering
 

 Defendant contends that the trial court erred in denying his motion to dismiss the misdemeanor breaking or entering charge because the State failed to present substantial evidence that he lacked consent to enter the residence. Specifically, he argues that his entry into the building was complete once he entered the garage and that his presence there was lawful based on Poole's prior consent.
 

 *923
 
 Misdemeanor breaking or entering "is a lesser included offense of felonious breaking or entering and requires only proof of wrongful breaking or entry into any building."
 
 State v. O'Neal
 
 ,
 
 77 N.C. App. 600
 
 , 606,
 
 335 S.E.2d 920
 
 , 924 (1985) (citation omitted).
 
 N.C. Gen. Stat. § 14-54
 
 (c) provides that for purposes of the crime of breaking or entering the term " 'building' shall be construed to include any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property."
 
 N.C. Gen. Stat. § 14-54
 
 (c) (2017). "Entry under this statutory crime has consistently been held to mean entry without the owner's consent."
 
 State v. Boone
 
 ,
 
 297 N.C. 652
 
 , 658,
 
 256 S.E.2d 683
 
 , 687 (1979).
 

 It is well established that for purposes of the crime of breaking or entering a person can possess consent to enter a portion-but not the entirety-of a building.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 State v. Rawlinson
 
 ,
 
 198 N.C. App. 600
 
 ,
 
 679 S.E.2d 878
 
 (2009) ;
 
 In re S.D.R.
 
 ,
 
 191 N.C. App. 552
 
 ,
 
 664 S.E.2d 414
 
 (2008). The defendant in
 
 Rawlinson
 
 was convicted of breaking or entering a business office attached to the retail area of a video store open to the public.
 
 Rawlinson
 
 ,
 
 198 N.C. App. at 604
 
 ,
 
 679 S.E.2d at 881
 
 . The State presented evidence that "members of the general public were only permitted entrance into the office when invited and accompanied by an employee of the video store."
 
 Id.
 
 at 610,
 
 679 S.E.2d at 884
 
 . Because the defendant in
 
 Rawlinson
 
 was neither invited nor accompanied by an employee at the time he entered the office, we held that he lacked consent to enter for purposes of
 
 N.C. Gen. Stat. § 14-54
 
 .
 

 Id.
 

 Likewise, in
 
 S.D.R.
 
 the defendant-who was convicted of felonious breaking or entering-was a participant in an after-school program at the Anson County Cooperative Extension Service.
 
 S.D.R.
 
 ,
 
 191 N.C. App. at 554
 
 ,
 
 664 S.E.2d at 417
 
 . Although asked to wait in the building's library by a staff member on the day in question, the defendant instead crossed the hall and entered the director's office where he proceeded to steal money from the director's purse. We noted that "[a]lthough the Extension is a public building that houses a public agency ... the evidence does not show that [the director's] job functions necessarily require the general public to have access to her office or that members of the general public generally use [her] office."
 

 Id.
 

 at 558
 
 ,
 
 664 S.E.2d at 419
 
 . As a result, we concluded that the defendant lacked consent to enter the office.
 

 Id.
 

 at 559
 
 ,
 
 664 S.E.2d at 420
 
 .
 

 Here, Poole testified that while Defendant was permitted to have access to the garage in order to collect his belongings he lacked
 
 *924
 
 permission to enter the interior of the residence. Although Defendant retained a garage door opener after moving out of the home, he never possessed a key to the home and was not given the new code to the alarm system after Poole changed it following their break-up. Furthermore, Poole activated the alarm system upon seeing Defendant in her driveway on 11 June 2015 before she left. Finally, the fact that Defendant had to kick in the door in order to gain entry into the residence supports the proposition that he lacked permission to enter the home.
 

 Therefore, we hold that the State presented sufficient evidence that Defendant lacked consent to enter the interior of the residence.
 
 See
 

 State v. Thompson
 
 ,
 
 59 N.C. App. 425
 
 , 427,
 
 297 S.E.2d 177
 
 , 179 (1982) ("[T]estimony that the outside key had been removed to prevent the daughter from breaking in again,
 
 *765
 
 and that the daughter was not welcome when the key was removed ... clearly indicated the victims' lack of consent to their daughter's entry in their absence without an express grant of permission."),
 
 appeal dismissed and disc. review denied
 
 ,
 
 307 N.C. 582
 
 ,
 
 299 S.E.2d 650
 
 (1983). Accordingly, the trial court properly denied Defendant's motion to dismiss the misdemeanor breaking or entering charge.
 

 II. Domestic Criminal Trespass
 

 Defendant next argues that the trial court erred in denying his motion to dismiss the domestic criminal trespass charge.
 
 N.C. Gen. Stat. § 14-134.3
 
 provides, in pertinent part, as follows:
 

 (a) Any person who enters after being forbidden to do so or remains after being ordered to leave by the lawful occupant, upon the premises occupied by a present or former spouse or by a person with whom the person charged has lived as if married, shall be guilty of a misdemeanor ....
 

 N.C. Gen. Stat. § 14-134.3
 
 (a) (2017).
 

 Defendant initially contends that the statute does not proscribe mere entry "without permission." Rather, he argues, "it criminalizes entry only after an express prohibition." According to Defendant, he was never "forbidden" from entering the interior of the residence because Poole never expressly prohibited him from doing so.
 

 The term "forbid" is not defined in
 
 N.C. Gen. Stat. § 14-134.3
 
 . However, our Supreme Court has held that "[n]othing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning. In the absence of a contextual definition, courts may look to dictionaries to determine the ordinary
 
 *925
 
 meaning of words within a statute."
 
 State v. Abshire
 
 ,
 
 363 N.C. 322
 
 , 329,
 
 677 S.E.2d 444
 
 , 449 (2009) (citation and quotation marks omitted).
 

 Webster's Ninth New Collegiate Dictionary defines "forbid," in part, as "to hinder or prevent as if by an effectual command."
 
 Webster's Ninth New Collegiate Dictionary
 
 482 (9th ed. 1991). Here, Poole ended her relationship with Defendant in April 2015 and ordered him to leave her residence. She then reaffirmed through her actions on 11 June 2015 the fact that Defendant was not allowed to go inside the house by locking the door and activating her alarm system upon discovering Defendant in her driveway. Her conduct served to prevent him from entering the interior of the residence and functioned as a prohibition against him doing so. Thus, we are satisfied that the State introduced sufficient evidence from which a rational juror could have found that Defendant was forbidden from entering Poole's home for purposes of
 
 N.C. Gen. Stat. § 14-134.3
 
 .
 

 Defendant further asserts that he did not commit domestic criminal trespass because (1) his entry upon the
 
 premises
 
 occurred at the time he initially drove onto Poole's driveway; and (2) that entry took place in accordance with prior permission from Poole for him to return to the home to retrieve his belongings. Thus, he contends, because he had Poole's consent to enter the premises in the first place it necessarily follows that he could not have been guilty of domestic criminal trespass.
 

 This argument fails for essentially the same reasons as his argument regarding his breaking or entering conviction. Although the "premises" occupied by Poole included both her home and the surrounding curtilage, the specific portion of the premises that Defendant was forbidden from entering was the interior of Poole's home. She had granted him limited permission to enter the garage in order to collect his belongings, but this consent never extended to the inside of the residence. Therefore, the fact that Defendant initially entered a
 
 portion
 
 of the premises with Poole's consent did not render him incapable of later trespassing upon a separate part of the premises where his presence was forbidden.
 

 Finally, Defendant argues that because Poole was not physically present at the time he entered the interior of her home the statute's requirement that the premises be "occupied" at the time of the trespass was not satisfied. In support of this contention, Defendant cites
 
 N.C. Gen. Stat. § 14-34.1
 

 *766
 
 (criminalizing the act of discharging a firearm "into an
 
 occupied
 
 dwelling") (emphasis added) and
 
 N.C. Gen. Stat. § 14-202
 
 (proscribing peeping "secretly into any room
 
 occupied
 
 by another person") (emphasis added) as examples of statutory crimes that use the word "occupied" to require the victim's actual physical presence.
 
 *926
 
 Defendant's reliance on these two statutes is misplaced, however, because the harms they seek to prevent could not logically occur absent the victim's physical presence at the time of the offense. With regard to the crime of domestic criminal trespass, conversely, the infliction of mental distress upon a victim resulting from a defendant's unauthorized entry into her home is a harm that can occur regardless of whether the victim is physically present at the time of the trespass. Accordingly, Defendant's argument lacks merit.
 

 We recognize that the circumstances of this case differ from the typical fact pattern of a domestic criminal trespass prosecution in that the victim actually requested Defendant's presence upon a portion of her property. Nevertheless, viewing the evidence in the light most favorable to the State-as we must-a reasonable juror could have concluded that the State's evidence satisfied all of the elements of this offense. Therefore, we conclude that the trial court properly denied Defendant's motion to dismiss the domestic criminal trespass charge.
 

 III. Clerical Error
 

 In his final argument, Defendant contends, and the State concedes, that a clerical error exists in the trial courts judgment. The judgment erroneously states that Defendant was convicted of misdemeanor larceny rather than misdemeanor breaking or entering. Accordingly, we remand for correction of this clerical error.
 
 See
 

 State v. Smith
 
 ,
 
 188 N.C. App. 842
 
 , 845,
 
 656 S.E.2d 695
 
 , 696 (2008) ("When, on appeal, a clerical error is discovered in the trial courts judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." (citation and quotation marks omitted)).
 

 Conclusion
 

 For the reasons stated above, we conclude that the trial court did not err in denying Defendant's motion to dismiss. However, we remand for the correction of a clerical error in the judgment.
 

 NO ERROR AT TRIAL; REMANDED FOR CORRECTION OF CLERICAL ERROR.
 

 Judges ZACHARY and BERGER concur.