BRYANT, Judge.
 

 *286
 
 Where the notice prohibiting defendant's entry in all Belk Stores was made in the ordinary course of business at or near the time of the transaction involved and was authenticated at trial by a witness familiar with such notices and the system under which they are made, the document was properly authenticated and the trial court did not err in admitting it. Where the general license or privilege to enter a store open to the public was specifically revoked as to defendant, and his ban from the store was implemented and "personally communicated" to him and no evidence suggests it had been rescinded, defendant's entry to the Belk store in Hickory was unlawful, and therefore, the State's evidence was sufficient to support defendant's conviction for felonious breaking and entering.
 

 On 21 January 2016, Renae Harris was on duty at her place of employment, Belk Store #26 in Hickory, North Carolina, where she was a loss prevention associate ("LPA"). In that position, she monitored cameras located throughout the store to ensure that "anybody behaving suspiciously" did not "try to exit without paying." Around 5:00 p.m., Harris was surveying the camera system when she observed defendant Billy Ray Allen in the men's shoe department. Defendant was wearing a blue and white hat. She continued monitoring other cameras when she noticed defendant again, this time in the menswear department wearing a black hat. She then watched as defendant walked to a rack of men's coats, removed his own coat, and put on a Michael Kors coat worth $240.00. Harris observed defendant "mak[ing] a motion that looked like he was pulling off the tag or the SKU number that the associate would ring at purchase ... then [defendant] picked up his coat and went into the fitting room."
 

 Harris and another LPA, Winston Faxon, proceeded to the fitting room area while defendant was inside. Defendant exited the fitting room a few minutes later with "[h]is jacket ... on over the top of [the Michael Kors] jacket." Harris identified herself as a Belk LPA and escorted defendant back to her office. As they were about to enter the office area, however, defendant pushed against Harris and "ran towards the door to try to get out of the department. He tried to approach the doors." Defendant made it past the point where items could be purchased, but he tripped
 
 *287
 
 before he could go any further, and Faxon was able to place him in handcuffs and take him to the office.
 

 Harris entered defendant's name in a Belk store database. She found an entry for his name at Belk Store #329 in Charlotte, along with a photograph that resembled defendant and an address and date of birth that matched those listed on his driver's license. The database indicated that, as of 14 November 2015, defendant had been banned from Belk stores for a period of fifty years pursuant to a Notice of Prohibited Entry following
 
 *195
 
 an encounter at the Charlotte store (the "2015 Notice"). The notice contained a signature under the portion acknowledging receipt by "Billy Ray Allen."
 

 Harris proceeded to complete another Notice of Prohibited Entry for the 21 January 2016 incident (the "2016 Notice"), banning defendant from Belk for a period of ninety-nine years. Defendant, Harris, and Faxon all signed the 2016 Notice. Thereafter, defendant was arrested and charged with "unlawfully, willfully[,] and feloniously" breaking and entering the Belk store and stealing property. Defendant was then indicted for (1) felonious breaking and entering in violation of
 
 N.C. Gen. Stat. § 14-54
 
 (a) and (2) felonious larceny in violation of
 
 N.C. Gen. Stat. § 14-72
 
 (b)(2) and 14-72(c).
 

 At the 1 February 2017 Criminal Session for Catawba County, defendant's case was tried before a jury, the Honorable Lisa Bell, Superior Court Judge presiding. The jury found defendant guilty of both charges-breaking and entering, and larceny. The trial court consolidated the charges and sentenced defendant to six to seventeen months imprisonment. Defendant's sentence was suspended, and he was placed on supervised probation for eighteen months. Defendant was ordered to pay court costs and serve forty-eight hours of community service. Defendant appeals.
 

 _________________________
 

 On appeal, defendant argues (I) the trial court erred by admitting the 2015 Notice banning defendant from all Belk stores without requiring proper authentication; (II) evidence of felony breaking and entering is insufficient where defendant entered a public area of a store during regular business hours; and (III) his conviction should be vacated where there is insufficient evidence that he entered the store unlawfully.
 

 I
 

 Defendant first argues the trial court erred by admitting the 2015 Notice banning defendant from all Belk stores as a business
 
 *288
 
 record without requiring proper authentication pursuant to Rule 901. We disagree.
 

 "A trial court's determination as to whether a document has been sufficiently authenticated is reviewed
 
 de novo
 
 on appeal as a question of law."
 
 State v. Hicks
 
 ,
 
 243 N.C. App. 628
 
 , 638,
 
 777 S.E.2d 341
 
 , 348 (2015) (quoting
 
 State v. Crawley
 
 ,
 
 217 N.C. App. 509
 
 , 515,
 
 719 S.E.2d 632
 
 , 637 (2011) ).
 

 "Pursuant to Rule 901 of the North Carolina Rules of Evidence, every writing sought to be admitted must first be properly authenticated."
 
 State v. Ferguson
 
 ,
 
 145 N.C. App. 302
 
 , 312,
 
 549 S.E.2d 889
 
 , 896 (2001) (citing N.C. Gen. Stat. § 8C-1, Rule 901(a) ). However, records of regularly conducted activity "are not excluded by the hearsay rule, even though the declarant is unavailable as a witness" if such records are "(i) kept in the course of a regularly conducted business activity and (ii) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness...." N.C.G.S. § 8C-1, Rule 803(6) (2015). Thus, the business records exception recognizes "[t]he impossibility of producing in court all the persons who observed, reported and recorded each individual transaction...."
 
 State v. Springer
 
 ,
 
 283 N.C. 627
 
 , 634,
 
 197 S.E.2d 530
 
 , 535 (1973) (citation omitted).
 

 The test for receiving business records into evidence is that they are "made in the ordinary course of business at or near the time of the transaction involved" and "authenticated by a witness who is familiar with them and the system under which they are made."
 
 State v. Wilson
 
 ,
 
 313 N.C. 516
 
 , 533,
 
 330 S.E.2d 450
 
 , 462 (1985) (citations omitted). "The authenticity of such records may ... be established by circumstantial evidence."
 

 Id.
 

 (citation omitted). However, "[t]here is no requirement that the records be authenticated by the person who made them."
 

 Id.
 

 (citations omitted).
 

 In the instant case, the State presented evidence that the 2015 Notice was completed and maintained by Belk in the regular course of business and issued two months before the incident in question. Harris, a Belk employee and LPA, testified that she was familiar with Belk's procedures for issuing bans from its
 
 *196
 
 properties and with the computer system in which Belk maintained its information about the incidents reported on such forms. She also established her familiarity with the forms, including the 2015 Notice, and that such forms were executed in the regular course of business, as well as her knowledge that not all forms were handled exactly the same way by each store. Pursuant to
 
 Wilson
 
 , and contrary to defendant's argument, it is of no legal moment that Harris
 
 *289
 
 did not herself make or execute the 2015 Notice about which she testified as it is clear she was "familiar ... with the system under which they [were] made."
 

 Id.
 

 (citations omitted). Accordingly, the trial court did not err in admitting the 2015 Notice into evidence, as Harris's testimony satisfied this Court's test for receiving business records. Defendant's argument is overruled.
 

 II & III
 

 Defendant argues (II) the trial court erred in denying his motion to dismiss because there is insufficient evidence of felony breaking and entering where defendant entered the public area of the Belk store during regular business hours. Specifically, defendant contends a person cannot be convicted of felonious entry into a place of business during normal hours because North Carolina case law states that this does not constitute an unlawful entry. As a result, defendant argues, (III) his conviction for felony breaking and entering should be vacated. We disagree.
 

 This court reviews "the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Sanders
 
 ,
 
 208 N.C. App. 142
 
 , 144,
 
 701 S.E.2d 380
 
 , 382 (2010) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (quoting
 
 State v. Barnes
 
 ,
 
 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ).
 

 Here, defendant was charged with felonious breaking or entering. The essential elements of this crime are "(1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein."
 
 State v. Brooks
 
 ,
 
 178 N.C. App. 211
 
 , 214,
 
 631 S.E.2d 54
 
 , 57 (2006) (quoting
 
 State v. White
 
 ,
 
 84 N.C. App. 299
 
 , 301,
 
 352 S.E.2d 261
 
 , 262 (1987) ). At issue in this case is the meaning of the first element, "breaking or entering."
 

 "In order for an entry to be unlawful under
 
 N.C. Gen. Stat. § 14-54
 
 (a), the entry must be without the owner's consent."
 
 State v. Rawlinson
 
 ,
 
 198 N.C. App. 600
 
 , 607,
 
 679 S.E.2d 878
 
 , 882 (2009) (citation omitted). "[A]n entry
 
 with
 
 consent of the owner of a building, or anyone empowered to give effective consent to entry, cannot be the basis of a conviction for felonious entry under [N.C. Gen. Stat. §] 14-54(a)."
 
 State v. Boone
 
 ,
 
 297 N.C. 652
 
 , 659,
 
 256 S.E.2d 683
 
 , 687 (1979) (emphasis added).
 

 In
 
 Boone
 
 , the defendant argued that the trial court erred in denying his motion to dismiss the felonious entry charge where the evidence
 
 *290
 
 showed he entered a store that was open to the public at the time.
 
 Id.
 
 at 655,
 
 256 S.E.2d at 684
 
 . This Court concluded that "[h]is entry was thus
 
 with the consent
 
 , implied if not express, of the owner [of the store]."
 
 Id.
 
 at 659,
 
 256 S.E.2d at 687
 
 (emphasis added). Therefore, "[i]t [could not] serve as the basis for a conviction for felonious entry."
 

 Id.
 

 Defendant attempts to draw from
 
 Boone
 
 a bright-line rule that if a person enters a store at a time when it is open to the public, that person's entry is with the consent, "implied if not express," of the owner of that store.
 
 See
 
 id.
 

 Defendant's argument, however, ignores certain facts present in the instant case which change the analysis completely and render
 
 Boone
 
 distinguishable.
 

 Unlike the store the defendant entered in
 
 Boone
 
 , here, the State presented evidence from which the jury could-and did-infer that the Belk store did not consent to defendant's entering its property on 21 January 2016. Belk issued the 2015 Notice expressly prohibiting defendant "from re-entering the premise[s] of any property or facility under the control and ownership of Belk wherever located" for a period of fifty years. The State's witness, Harris, also testified that the
 
 *197
 
 2015 Notice of the ban had not been rescinded, no one expressly allowed defendant to come back onto Belk store property, and no one gave defendant permission to enter the Belk store on 21 January 2016. In
 
 Boone
 
 , there was no evidence that the defendant in that case had ever been banned from the store in question.
 
 See
 
 id.
 

 While defendant is correct in his assertion that "no case in North Carolina has held that this [precise] conduct constitutes felony breaking and entering,"
 
 cf.
 

 State v. Lindley
 
 ,
 
 81 N.C. App. 490
 
 , 494,
 
 344 S.E.2d 291
 
 , 293-94 (1986) (upholding conviction for felonious breaking and entering where the defendant entered the premises of his former residence without consent of the property owner pursuant to a marital separation agreement signed by the defendant), a Missouri Court of Appeals case with a nearly identical fact pattern is illustrative.
 

 In
 
 State v. Loggins
 
 , the defendant entered a Wal-Mart property after having been previously banned indefinitely from all Wal-Mart properties two years before.
 
 464 S.W.3d 281
 
 , 282 (Mo. App. 2015). Similar to defendant in the instant case, the defendant in
 
 Loggins
 
 had "signed a Wal-Mart-issued document titled, 'Notification of Restriction from Property[,]' " on the date he was initially banned from all Wal-Mart stores.
 

 Id.
 

 at 282 n.1. Upon entering a Wal-Mart store after his ban was implemented, the defendant attempted to steal a bottle of bourbon and conceal it under his shirt and leave the store.
 

 Id.
 

 at 282-83
 
 . The defendant was caught and
 
 *291
 
 charged with first-degree burglary,
 
 [1]
 
 but at trial (and also later on appeal) the defendant attempted to argue that he could not be guilty of burglary "because there was no unlawful entry insofar as Wal-Mart consented to his entry."
 

 Id.
 

 at 283
 
 . In other words, the defendant argued, much as defendant does in the instant case, that "because Wal-Mart was open to the public, [he] generally had a license or privilege to enter, regardless of his purpose."
 

 Id.
 

 The Missouri Court of Appeals disagreed, stating "that license or privilege was revoked on [the date] when Wal-Mart 'personally communicated' to [the defendant] (through the 'Notification of Restriction from Property') that he was no longer allowed to enter onto Wal-Mart Stores, Inc. property, unless and until the notice of restriction was rescinded."
 

 Id.
 

 Accordingly, the Missouri court held that because "there was no evidence that Wal-Mart either expressly or impliedly rescinded its notification banning [the defendant] from the property" the notice of his ban from the property "remained in effect, rendering [the defendant's] entry unlawful."
 

 Id.
 

 at 284
 
 .
 

 We hold that the general license or privilege to enter the Belk store held by defendant was revoked on 14 November 2015, the date on which defendant was presented with and signed the 2015 Notice of Prohibited Entry banning defendant from entering "any Belk property" for a period of fifty years. As the incident in question occurred on 21 January 2016, two months after the ban was implemented and "personally communicated" to defendant,
 
 see
 

 id.
 

 , and no evidence suggests the ban had been rescinded, we conclude it remained in effect, rendering defendant's entry to the Belk store in Hickory unlawful. Accordingly, the State's evidence was sufficient to support the felonious breaking and entering charge, and defendant's argument that his conviction for the same should be vacated is overruled.
 

 NO ERROR.
 

 Judge BERGER concurs.
 

 Judge MURPHY concurs in the result only.
 

 [1]
 

 Missouri's burglary statute is markedly similar to North Carolina's felony breaking and entering statute: "A person commits the crime of burglary in the first degree if he knowingly enters unlawfully ... a building ... for the purpose of committing a crime therein, and ... while in the building[,] ... [t]here is present ... another person who is not a participant in the crime."
 
 State v. Loggins
 
 ,
 
 464 S.W.3d 281
 
 , 283 (alterations in original) (quoting
 
 Mo. Rev. Stat. § 569.160.1
 
 (3) ).
 
 Compare
 

 id.
 

 ,
 
 with
 

 N.C. Gen. Stat. § 14-54
 
 (a) (2015) ("Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon.").